UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KEVIN COE,

                Petitioner,

    v.

MARK STRONG,

                Respondent.

CASE NO. C13-6088 RJB-JRC

REPORT AND RECOMMENDATION

NOTED FOR:
SEPTEMBER 5, 2014

      The District Court has referred this 28 U.S.C. § 2254 petition for a writ of habeas corpus to United States Magistrate Judge J. Richard Creatura. The District Court's authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner seeks relief from a state sentence.

      The Court recommends denying this petition; the stated grounds of petitioner's claim do not warrant habeas corpus relief because petitioner fails to show a violation of clearly established federal law as required by 28 U.S.C. 2254(d).

1    <u>BASIS FOR CUSTODY</u>

2         Petitioner is in Washington state custody and is involuntarily civilly committed to the

3    Special Commitment Center on McNeil Island, Washington. Dkt. 13, Ex. 1. Pursuant to a jury

4    verdict, the Spokane County Superior Court entered a valid civil commitment order on October

5    16, 2008. *Id.*

6    <u>FACTS</u>

7         The Washington State Court of Appeals summarized the facts surrounding the crime and

8    conviction:

9         Coe was originally convicted in 1981 of four counts of first degree rape. *State v.*
          *Coe,* 101 Wash.2d 772, 774, 684 P.2d 668 (1984) (*Coe* I). But those convictions
10        were overturned on appeal primarily because some of the victims identified Coe
          only after being hypnotized. *Id.* at 785–86, 788–89, 684 P.2d 668. At Coe's
11        second trial in 1985, Coe was convicted of three counts of first degree rape. *State*
          *v. Coe,* 109 Wash.2d 832, 834, 750 P.2d 208 (1988) (*Coe* II). Again, Coe
12        appealed and this court reversed two of the three counts because of the
          "admission of posthypnotic identification testimony." *Id.* at 850, 750 P.2d 208.
13        Ultimately, Coe's 1985 conviction for the first degree rape of Julie H. was his sole
          conviction, and he was sentenced to 25 years.
14
          On August 30, 2006, the State filed a petition seeking to have Coe
15        committed as an SVP pursuant to chapter 71.09 RCW. During the trial, the State
          sought to link Coe to 40 unadjudicated sexual offenses. These 40 offenses
16        included both rapes and indecent exposure incidents. The trial court admitted 36
          of these offenses after finding by a preponderance of the evidence that Coe was
17        the offender.

18        The State proved these offenses through multiple sources. For example, it
          relied on Dr. Robert Keppel, the State's "signature analysis" expert, who linked
19        Coe to 18 rapes, including the Julie H. rape. Additionally, it relied on statistical
          results from the Homicide Investigation Tracking System (HITS) database, which
20        linked Coe to 13 rapes that were admitted at trial. Dr. Keppel corroborated his
          signature analysis with the HITS results but did not rely on them. The State also
21        had several victims identified by the signature analysis and HITS results testify at
          the SVP trial.
22
          Further, because the above evidence alone does not prove SVP status, *see*
23        RCW 71.09.020(18), the State's psychologist, Dr. Amy Phenix, testified that Coe
          suffered from the following mental abnormalities: (1) paraphilia, not otherwise
24

REPORT AND RECOMMENDATION - 2

1   specified (NOS), nonconsenting females, with sadistic traits, (2) paraphilia NOS,
    urophilia and coprophilia, and (3) exhibitionism. Additionally, she testified that
2   Coe had a personality disorder NOS, with narcissistic and antisocial traits.
    Her opinion was based on her review of over 74,000 pages of material, which
3   included the other offenses. She considered identifications by Coe's victims,
    blood typing evidence, and Coe's own admission to two offenses. She also
4   incorporated the signature analysis and HITS results into her diagnosis.
    On October 15, 2008, after a month-long trial, the jury found Coe was an SVP.
5   The trial court then ordered Coe's civil commitment. Coe appealed and the Court
    of Appeals affirmed the trial court. He then petitioned for review, which we
6   granted. *In re Det. of Coe,* 172 Wash.2d 1001, 258 P.3d 685 (2011).

7   Dkt. 14, Ex. 32 at 8-9.

8   <u>PROCEDURAL HISTORY</u>

9       Petitioner first appealed his civil commitment to the Washington Court of Appeals,

10  Division III. He raised seven issues in his brief:

11      1.      Petitioner's trial counsel provided ineffective assistance by not requesting
                a jury instruction defining the term "personality disorder;"
12
13      2.      The trial court erred by admitting expert testimony about a ritualistic
                crime signature linking Coe to seventeen unadjudicated rapes;

14      3.      The trial court erred by admitting evidence from the Homicide
                Investigation Tracking System (HITS) linking Coe to unadjudicated rapes.
15
16      4.      The trial court erred by admitting victim testimony, where those victims
                were linked to Coe by the ritualistic signature, HITS and other evidence;

17      5.      The trial court erred by permitting the State's expert to rely on the
                unadjudicated rapes in forming her opinions;
18
19      6.      The trial court erred by permitting the State's expert to testify about
                unadjudicated sexual crimes in order to show the bases of her opinions;

20      7.      The trial court erred by permitting the State's expert to testify about
                unadjudicated sexual crimes in order to show the bases of her opinions,
21              where Coe was unable to confront those victims.

22  Dkt. 13 at 3:5-18; Ex. 23.

23

24

REPORT AND RECOMMENDATION - 3

The Washington State Court of Appeals affirmed the civil commitment. Dkt. 13 at 3:18-20; Ex. 26. Petitioner filed a motion for discretionary review with the Washington State Supreme Court in which he raised eight grounds for relief:

1.    Petitioner's trial counsel provided ineffective assistance by failing to request a jury instruction defining the term "personality disorder;"

2.    Coe's constitutional due process right to confrontation was violated when the trial court permitted the State's experts to testify about crimes she relied upon, where Coe was unable to cross-examine those victims;

3.    The trial court erred by admitting expert testimony about a ritualistic crime signature linking Coe to seventeen unadjudicated rapes.

4.    The trial court erred by admitting evidence from the Homicide Investigation Tracking System (HITS) linking Coe to unadjudicated rapes, and his trial counsel were ineffective for failing to object to the evidence as hearsay;

5.    The trial court erred by admitting victim testimony, where those victims were linked to Coe by inadmissible crime signature and HITS evidence;

6.    The trial court erred by permitting the State's expert to rely upon unadjudicated crimes linked to Coe by crime signature and HITS in forming her opinion;

7.    The trial court erred by permitting the State's expert to testify about unadjudicated offenses linked to Coe by signature and HITS evidence.

8.    Cumulative error violated Coe's constitutional due process right to a fair trial.

Dkt. 13 at 3:21-26, 4:1-12; Ex. 27.

On September 27, 2012, the Washington Supreme Court rejected those arguments and affirmed Coe's civil commitment in a published opinion. Dkt. 13 at 4:10-11; Ex. 32. The Supreme Court issued its mandate on October 26, 2012. Dkt. 13 at 4:11-12; Ex. 33. Having presented his federal habeas claim to the Washington Supreme Court, petitioner has exhausted his state remedies in accordance with 28 U.S.C. § 2254(b).

1    In his petition for writ of habeas corpus, petitioner raises three grounds for relief;

2        1.      His trial counsel provided ineffective assistance by failing to ensure that
              the court instruct the jury on the definition of "personality disorder;"

3

4        2.      His constitutional due process right to confront witnesses was violated
              when he was unable to examine at trial or depose the crime victims upon
5                  whose accounts and testimonies the State's expert relied in forming her
              opinion;

6        3.      Cumulative error deprived him of a fair trial.

7    Dkt. 6 at ¶ 7.

8    <u>EVIDENTIARY HEARING NOT REQUIRED</u>

9    Evidentiary hearings are not usually necessary in habeas cases.  According to 28 U.S.C.

10   §2254(e)(2), a hearing will occur only if a habeas applicant has failed to develop the factual basis

11   for a claim in state court, and the applicant shows that: (A) the claim relies on (1) a new rule of

12   constitutional law, made retroactive to cases on collateral review by the Supreme Court that was

13   previously unavailable, or if there is (2) a factual predicate that could not have been previously

14   discovered through the exercise of due diligence; and (B) the facts underlying the claim would

15   be sufficient to establish by clear and convincing evidence that but for constitutional error, no

16   reasonable fact finder would have found the applicant guilty of the underlying offense.  28

17   U.S.C. §2254(e)(2)(B).

18   Petitioner relies on established constitutional law, the factual predicates are before the

19   court in the record provided by respondent, and the facts do not establish that no reasonable fact

20   finder would have found the applicant guilty. Accordingly, the Court concludes that an

21   evidentiary hearing is not necessary to decide this case.

22   //

23   //

24

1
STANDARD OF REVIEW

2       Federal courts may intervene in the state judicial process only to correct wrongs of a

3 constitutional dimension.  *Engle v. Isaac*, 456 U.S. 107, 119 (1983).  28 U.S.C. § 2254 explicitly

4 states that a federal court may entertain an application for writ of habeas corpus "only on the

5 ground that [petitioner] is in custody in violation of the constitution or law or treaties of the

6 United States."  28 U.S.C. § 2254 (a) (1995).  The Supreme Court has stated many times that

7 federal habeas corpus relief does not lie for mere errors of state law.  *Estelle v. McGuire*, 502

8 U.S. 62, 67 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41

9 (1984).

10      A habeas corpus petition shall not be granted with respect to any claim adjudicated on the

11 merits in the state courts unless the adjudication either: (1) resulted in a decision that was

12 contrary to, or involved an unreasonable application of, clearly established federal law, as

13 determined by the Supreme Court; or (2) resulted in a decision that was based on an

14 unreasonable determination of the facts in light of the evidence presented to the state courts.  28

15 U.S.C. §2254 (d).  Further, a determination of a factual issue by a state court shall be presumed

16 correct, and the applicant has the burden of rebutting the presumption of correctness by clear and

17 convincing evidence.  28 U.S.C. §2254 (e) (1).

18
DISCUSSION

19      1.      Effectiveness of Petitioner's Trial Counsel

20      Petitioner claims that his civil commitment should be reversed because he was

21 disadvantaged by ineffective assistance of counsel. In order to establish that he was ineffectively

22 assisted by counsel, petitioner must show (1) that counsel's representation fell below an

23 objective standard of reasonableness and (2) that the deficient performance affected the result of

24

1    the proceeding.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Accordingly, the court will

2    first consider the totality of the circumstances, viewed at the time of counsel's conduct and

3    determine whether counsel's assistance was reasonable.  *Strickland*, 466 U.S. at 690. To

4    establish his claim, petitioner must show that the attorney's conduct reflects a failure to exercise

5    the skill, judgment, or diligence of a reasonably competent attorney.  *United States v. Vincent*,

6    758 F.2d 379, 381 (9th Cir.), *cert. denied*, 474 U.S. 838 (1985). Next, the Court will consider

7    whether counsel's conduct affected the proceeding's result. *Strickland*, 466 U.S. at 694. Here,

8    petitioner must demonstrate prejudice. *Id*. This requires that petitioner "show that there is a

9    reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

10   would have been different.  A reasonable probability is a probability sufficient to undermine

11   confidence in the outcome." Id. at 694.

12        On review, the Court must attempt to "eliminate the distorting effects of hindsight, to

13   reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

14   counsel's perspective at the time."  *Id*. Furthermore, our "[r]eview of counsel's performance is

15   highly deferential and there is a strong presumption that counsel's conduct fell within the wide

16   range of reasonable representation." *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (*citing*

17   *Hensley v. Crist*, 67 F.3d 181, 184 (9th Cir. 1995)).

18        Upon review, the Washington Court of Appeals adjudicated the merits of petitioner's

19   ineffectiveness of counsel claim and properly acknowledged that *Strickland* applies. Dkt. 13 at

20   11:16-18, Ex. 26 at ¶ 56. Applying the *Strickland* standard, the Court of Appeals expressly

21   rejected petitioner's claim and concluded that no deficient performance arose from failing to

22   request an instruction defining the term "personality disorder" when the existing state precedent

23   held that such a jury instruction was not required. Ex. 26 at ¶¶ 58, 59. Additionally, the Court of

24

1   Appeals concluded that petitioner suffered no prejudice under the second prong of the standard,

2   noting that even petitioner's own expert testified that he suffered from the personality disorders

3   attributed to him by the State's expert. Ex. 26 at ¶¶ 60.

4          After petitioner presented this claim to the Washington Supreme Court, the Court ruled

5   that the claim had no merit, stating:

6          Thus, Coe's counsel had no reason to believe, at the time of trial, that he should
           have requested a jury instruction for the term "personality disorder." It is difficult
7          to imagine exactly how Coe's counsel was deficient when then-controlling
           authority stated an instruction was not necessary. Consequently, Coe fails to
8          establish deficient performance and his ineffective assistance of counsel claim
           necessarily fails.
9
    Dkt. 14, Ex. 32 at ¶ 20.
10
           Failure to request a particular jury instruction cannot constitute ineffective assistance
11
    of counsel where the established precedent at the time of trial states that such an instruction is
12
    not necessary. Accordingly, petitioner's ineffective assistance of counsel claim must fail.
13
           2.      The Inability to Examine or Depose Crime Victims
14
           Petitioner indicates that the State's expert relied on the testimony from five sexual assault
15
    victims who were unavailable to testify in order to form his opinion regarding petitioner's status
16
    as a sexually violent predator. Dkt. 7 at 11. Petitioner claims that the use of this evidence
17
    violated his Sixth Amendment right to confront his accusers. The Sixth Amendment's
18
    "confrontation clause," made applicable to the states through the Fourteenth Amendment,
19
    *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965), provides: "In all *criminal prosecutions*, the
20
    accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const.
21
    Amend. VI (emphasis added). Petitioner's commitment under chapter 71.09 of the Revised
22
    Code of Washington is pursuant to a civil proceeding. Because petitioner was not facing
23

24

1  criminal prosecution, the Confrontation Clause does not apply. *Hannah v. Larche*, 363 U.S.

2  420, 440 n.16 (1960).

3        Nonetheless, because involuntary civil commitment is a significant deprivation of liberty,

4  those who face civil commitment proceedings are entitled to due process of law. *Carty v.*

5  *Nelson*, 426 F.3d 1064, 1074 (9th Cir. 2005) (opinion amended on denial of reh'g) (*citing Vitek*

6  *v. Jones*, 445 U.S. 480 (1980)). The Washington Supreme Court determined that the inability to

7  examine or depose the victims who were unavailable did not violate petitioner's due process

8  rights. The Court's reasoning was as follows:

9            We have previously held that a defendant in an SVP proceeding has no
          right to confront witnesses, either in trial or in deposition. *In re Det. of Stout*, 159
10        Wash.2d 357, 368–74, 150 P.3d 86 (2007). In *Stout*, the detainee wished to
          confront a victim who gave two telephonic depositions and one filmed deposition.
11        *Id*. at 368, 150 P.3d 86. This court applied the *Mathews*FN11 balancing test and
          concluded that Stout had no due process right to confront witnesses. Id. at 370–
12        74, 150 P.3d 86. The court noted that "although SVP commitment proceedings
          include many of the same protections as a criminal trial, SVP commitment
13        proceedings are not criminal proceedings." *Id*. at 369, 150 P.3d 86.

14            FN11. Mathews v. Eldridge, 424 U.S. 319, 334–35, 96 S.Ct. 893, 47
             L.Ed.2d 18 (1976).

15
              Coe attempts to limit *Stout* to its facts because the detainee there at least
16        had an opportunity to cross-examine the witness, which Coe never did.FN12 Coe
          believes this fact tips the *Mathews* balancing test in his favor. We disagree. The
17        *Mathews* test balances "(1) the private interest affected; (2) the risk of erroneous
          deprivation of that interest through existing procedures and the probable value, if
18        any, of additional procedural safeguards; and (3) the governmental interest,
          including costs and administrative burdens of additional procedures." *Id*. at 370,
19        150 P.3d 86 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47
          L.Ed.2d 18 (1976)).

20
              FN12. Cross-examination in *Stout* meant that the detainee could view the
21           depositions and point out inconsistencies. 159 Wash.2d at 371, 150 P.3d
             86.

22
              The first factor clearly favors Coe because he has a significant interest in
23        his physical liberty. See *id*. But the remaining two factors still favor the State. In
          *Stout*, the second factor favored the State because significant procedural

24

REPORT AND RECOMMENDATION - 9

safeguards exist in an SVP proceeding. *Id.* at 370–71, 150 P.3d 86. Specifically, the detainee has an initial right to cross-examine witnesses during the probable cause hearing, and throughout the proceedings he has a right to counsel, to present evidence, and to view the petitions and reports on file. *Id.* at 370, 150 P.3d 86. Further, the detainee, throughout the entire proceeding, has a right to counsel, to a jury trial, and to have the charges proved beyond a reasonable doubt. *Id.* at 370–71, 150 P.3d 86. Finally, the jury verdict must be unanimous in an SVP proceeding. Id.

These significant safeguards led the *Stout* court to conclude that creating a confrontation right would add little value. *Id.* at 371, 150 P.3d 86. In *Stout*, there was no concern over the testimony's veracity as it was taken under oath, and the detainee had an opportunity to review the videotaped testimony, thereby allowing him the opportunity to impeach the witness. *Id.* Those same facts do not exist here, and Coe believes that is enough to change the outcome of the *Mathews* test. Here, Dr. Phenix testified that she incorporated these five offenses into her evaluation of Coe. There was not an opportunity for the jury to evaluate these witnesses, like the jury could with the witness in Stout.

Regardless, the same statutory safeguards exist. Coe had a right to counsel, to a jury trial, and to a unanimous verdict. "Most importantly, at trial the State carries the burden of proof beyond a reasonable doubt." *Id.* at 370–71, 150 P.3d 86. His inability to cross-examine the five victims does not reduce the effectiveness of the current statutory procedural safeguards. We stated the safeguards were sufficient in *Stout*, and the facts of this case do not change the analysis now. If Coe believed the facts as related by Dr. Phenix were untrue, nothing prevented him from offering rebuttal testimony about those facts or cross-examining Dr. Phenix.

Additionally, the evidence was never admitted substantively, which favors the State under the second prong. The evidence was admitted only to show the underlying basis for Dr. Phenix's opinion. ER 705 allows otherwise inadmissible evidence to be admitted for this purpose so long as it is not being offered for the truth of the matter asserted. *Grp. Health Coop. of Puget Sound, Inc.*, 106 Wash.2d at 399, 722 P.2d 787. This reduces the probable value of requiring an opportunity for confrontation. The cases Coe relies on to suggest otherwise are all criminal cases involving the Sixth Amendment to the United States Constitution. *See* Reply Br. of Appellant at 29 (citing *Crawford v. Washington*, 541 U.S. 36, 61 (2004); *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 321 (2009); *People v. Goldstein*, 6 N.Y.3d 119, 122 (2005)). Such cases have little relevance when considering the due process concerns outside a criminal trial. *Cf. Stout*, 159 Wash.2d at 372–73, 150 P.3d 86 (emphasizing that few cases outside of a criminal trial context have supported a due process right to confront a witness). Consequently, the second *Mathews* factor favors the State.

REPORT AND RECOMMENDATION - 10

1

2

3

4

    The third *Mathews* factor also favors the State. *Id*. at 371, 150 P.3d 86. To begin, the State has a significant interest in preventing an SVP from reoffending. *Id*. The State also "has an interest in streamlining commitment procedures [to] avoid[ ] the heavy financial burden that would" accompany live testimony. *Id*. The additional financial burden is unjustifiable considering the marginal protection that an additional confrontation right would provide to the detainee's liberty interest. *Id*. at 372, 150 P.3d 86. As a result, we hold that Coe had no due process right to confront these victims.

5

Ex. 32 at ¶¶ 63-70.

6

7

   Here, the Court agrees with the Washington Supreme Court's reasoning and application

8

of the *Mathews* balancing test. It is unlikely that allowing this evidence within the narrow scope

9

of ER 705 would erroneously deprive petitioner of his liberty. Furthermore, the State has a

10

significant interest in both preventing an SVP from reoffending and streamlining commitment

11

procedures to avoid the heavy financial and administrative burden that would accompany live

12

testimony.

13

   Therefore, plaintiff has not demonstratrated that the state court violated clearly

14

established federal or constitutional law and the petition should be denied..

15

   3.  Cumulative Error

16

   Petitioner ultimately argues that the alleged errors discussed above resulted in reversible

17

cumulative error. Cumulative error applies where, "although no single trial error examined in

18

isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors

19

may still prejudice a defendant." *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002)

20

(quoting *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir.1996)). The Court has found

21

that no error was committed in either of petitioner's prior claims. Therefore, the doctrine of

22

cumulative error is irrelevant here.

23

//

24

//

1           CERTIFICATE OF APPEALABILITY AND OBJECTIONS

2           A Petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

3    court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

4    (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner

5    has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. §

6    2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could

7    disagree with the district court's resolution of his constitutional claims or that jurists could

8    conclude the issues presented are adequate to deserve encouragement to proceed further."

9    *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484

10   (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a

11   certificate of appealability with respect to this petition.

12          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

13   fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

14   6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

15   review by the district judge.  *See* 28 U.S.C. § 636(b)(1)(C).  Accommodating the time limit

16   imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

17   September 5, 2014, as noted in the caption.

18          Dated this 15th day of August, 2014.

19

20                                              J. Richard Creatura
                                                United States Magistrate Judge
21

22

23

24